# EXHIBIT A

## INDEPENDENT CONTRACTOR AGREEMENT

AGREEMENT date *August 1, 1998* by and between LANARD & AXILBUND, INC., a PA Corporation a duly licensed real estate broker ("Broker") and JASON M. WOLF , a duly licensed real estate salesperson and/or broker ("Salesperson").

### BACKGROUND

Salesperson and Broker desire to enter into an agreement whereby Salesperson will be engaged by Broker as an independent contractor, and not an employee. The Agreement shall establish their respective rights and responsibilities, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Engagement as Independent Contractor; Termination of any Employment Status**

    (a) Broker hereby engages Salesperson as an independent contractor and not an employee, and Salesperson hereby accepts such engagement.

    (b) Salesperson is not and shall not be treated as an employee of Broker with respect to the services rendered hereunder for any purposes whatsoever, including, without limitation, Federal, State or local tax purposes. Normal employee payroll

deductions, such as social security, State, Federal and local withholding, unemployment compensation and the like will not be made by Broker, and Salesperson shall be responsible for and shall pay all of his own taxes.

    2.   <u>Duties; Professional Conduct; Authority</u>

       (a)  Salesperson shall perform such duties on behalf of Broker as are customarily performed by salespeople or brokers in the commercial real estate field and as are from time to time assigned by Broker.

       (b)  Salesperson is assigned to the Marketing Division or Divisions of Broker checked below:

        [ ]  Industrial      [ ]  Investment
        [ ]  Retail        [ ]  Residential
        [X]  Office

Broker shall have the right at any time, with Salesperson's consent, to reassign Salesperson to a different Marketing Division or Divisions.

    (c)  Salesperson shall devote his entire working time and best efforts to the business of Broker and to the maintenance and enhancement of Broker's good will and reputation.  Salesperson shall perform such duties and functions as are from time to time assigned to Salesperson by Broker, subject to the rules, regulations and practices established from time to time by Broker. In no event shall Salesperson have the authority to bind Broker for any purpose whatsoever.

(d) Salesperson shall at all times during his engagement hereunder act in accordance with all applicable laws, statutes, ordinances, rules, regulations, guidelines, precepts and standards of the appropriate authorities of any jurisdiction in which Salesperson shall represent Broker, including, without limitation, those of the Real Estate Commission of the Commonwealth of Pennsylvania and Philadelphia Board of Realtors and any other professional organizations with which Broker is affiliated. Salesperson shall, under any and all circumstances, conduct himself in an ethical and proper manner in connection with the discharge by Salesperson of his duties hereunder.

(e) Salesperson shall at all times during the term of this Agreement maintain automobile insurance indicating the car is used for business purposes in the amount of not less than $1,000,000 personal injury coverage per occurrence, or such other amount as Broker from time to time shall require, and shall provide Broker with evidence of such insurance upon request. Salesperson shall also be covered or excluded from coverage under Broker's policies as set forth in Schedule B, as may be modified from time to time by Broker.

3. <u>Solicitation and Servicing of Clients</u>

(a) Broker shall have the right, in its sole discretion, to determine which or with which of Broker's Clients or prospective Clients Salesperson shall have the right to solicit, service, represent or otherwise do or transact business. Salesperson, unless specifically authorized or instructed by Broker to the

contrary, shall limit his activity to those properties and businesses within the jurisdiction of his assigned Marketing Division or Divisions, and Salesperson shall refer all prospective tenants of properties and buyers of properties and businesses outside such jurisdiction to Broker.

(b) If Salesperson shall obtain an Exclusive Agency by its sole efforts with respect to a property or business outside of the jurisdiction of his assigned Marketing Division or Divisions, the property or business shall be marketed by Broker as though the Exclusive Agency had been obtained by a principal of Broker and, Salesperson shall be entitled to receive a commission under either Clause IB or IIB of Schedule A hereto.

(c) If Salesperson shall, through his sole efforts, obtain for Broker an Exclusive Agency for a property or business and if such business or property is within the jurisdiction of his assigned Marketing Division or Divisions, then, subject to subparagraph 3(a) above, Salesperson shall be entitled to receive all inquiries made with respect to such property.

4. Compensation; Services

(a) Salesperson shall receive, as Salesperson's total compensation for services rendered hereunder, commissions in accordance with the Commission Schedule set forth in Schedule A hereto. Broker reserves the right, upon thirty (30) days prior written notice, to modify and amend Schedule A from time to time. Salesperson's commissions shall be paid no less frequently than quarterly, taking into account a reserve for expected expenses and

4

anticipated earnings for the next quarter.

(b) If Broker shall assign Salesperson to work with a senior salesperson associated with Broker, then at its election, Broker may reduce Salesperson's net commissions (i.e. after deduction of those expenses set out in Section 7) by an amount up to twenty (20%) percent during the period of such assignment and the amount by which the commission is reduced shall be paid to the senior salesperson to whom Salesperson is assigned.

(c) Broker, at its sole cost and expense, will provide Salesperson with such office space, secretarial services, telephone services and supplies as Broker may from time to time deem necessary and appropriate to suit Broker's business requirements.

5. Earned and Deferred Commissions

All commissions payable hereunder to Salesperson shall be deemed earned upon receipt by Broker of the gross commission, compensation, fee or other form of remuneration for the service rendered by Broker in connection with the property and shall be payable as and subject to the deductions elsewhere provided in this Agreement; and, to the extent that such remuneration shall not have been received by Broker and is either collectible or is to be paid to Broker in the future, commissions shall be deemed deferred. Salesperson shall not receive any commission or have any commissions credited to Salesperson's account unless and until Broker has been paid. If Broker has been paid less than the total amount to which Broker has been entitled, Salesperson shall be credited with or paid the applicable percentage of the net income

received by Broker.  Deferred commissions shall be credited to
Salesperson's account at the time Broker receives such payments.

   6. Leasing Commissions

   (a) Salesperson shall be entitled to receive commissions on
leases executed and delivered on or after the date of this
Agreement and on all renewals or extensions thereof, as provided in
this Agreement.

   7. Calculation of Commissions

   (a) All commissions payable to Salesperson shall be a
percentage (as set forth in Schedule A) of the net income received
by Broker for those transactions for which Salesperson shall be
entitled to receive commissions hereunder.  Broker's net income
shall be calculated by deducting all expenses and costs incurred by
Broker in connection with the property from Broker's gross
compensation thereof, which expenses and costs shall include, but
not be limited to the following:

               (i)  Brochures, newspapers, periodical and other
media advertising, after deducting any advertising allowance
received by Broker from the Owner of the property.

               (ii)  Signs placed upon the subject property which
shall be other than standard in size or format or shall be more
expensive to erect or transport.

               (iii)  Fees, commissions, costs and other payments
required to be made to Cooperating Brokers, attorneys or other
third parties entitled, in Broker's sole opinion, to receive same.

(iv)   Legal fees and the cost of litigation by or against Broker with respect to the subject property, including, but not limited to, any attempt by Broker to collect commissions, and any commissions shared or returned as a result of any litigation or third-party claim.

(v)   Miscellaneous costs and expenses, whether anticipated or unanticipated, usual or unusual which, in Broker's sole discretion are deemed to have been incurred in connection with the property.

(b)   The following items shall be deducted from Salesperson's earned and deferred commissions, and debited against Salesperson's account:

(i)   Any sums which the Salesperson shall be responsible to collect, whether or not the transaction was consummated, including, but not limited to, advertising allowances (if not collected within three (3) months of billing but subject to reversal when collected) and reimbursable charges, costs and expenses incurred by Broker at the request of Salesperson.

(ii) A percentage of any costs or expenses relating to a transaction, but only in the event the transaction is consummated, which arises or which Broker becomes aware of after Salesperson's commission with respect to that transaction has been paid, which percentage shall be equal to the Salesperson's percentage commission applicable to such transaction.

(iii)   All loans made to Salesperson whether through the payment of a draw or otherwise.

7

8. Multi-Tenant Properties

(a) If Broker is the exclusive leasing agent for a multi-tenant property, Salesperson obtains a buyer for the property, and that buyer retains Broker as the exclusive leasing agent for the property after settlement, then, subject to the terms of paragraph 3 hereof, Salesperson shall be deemed to have obtained an Exclusive Agency for Broker with respect to any unleased space in the property. Salesperson shall not be paid a leasing commission on any leases, renewals or extensions for any occupant of space in the property at the time of the execution of the Agreement of Sale.

(b) If, through the sole efforts of Salesperson, Broker is granted an Exclusive Agency to lease a multi-tenant property where Broker was not the exclusive leasing agent, then:

(i) Subject to the terms of Paragraph 3 hereof, Salesperson shall be deemed to have obtained an Exclusive Agency for Broker with respect to any unleased space in that property.

(ii) With respect to leases in effect at the property at the time of the commencement of the Exclusive Agency, Salesperson shall receive commissions thereon in accordance with Schedule A hereto with respect to those leases and any option or renewal terms thereof.

(c) Salesperson shall not be paid a leasing commission on any leases, renewals or extensions for any occupant of space in the property if Broker had been receiving commissions for same at the time its Exclusive Agency commenced.

9. Properties Purchased by Principals of Broker

(a) If Salesperson makes Broker aware of a real estate transaction or investment opportunity ("Deal") and Principals of Broker purchase all of part of the Deal, and if a commission is paid by the seller, Salesperson shall be entitled to his full commission in accordance with Schedule A hereto whether or not Salesperson purchases a portion of the Deal. If a commission is not payable by the Seller, Salesperson shall be entitled to a commission equal to the commission which would have been paid had the property involved in the Deal been an open agency, based on the rate which would have been customarily paid on that type of transaction.

(b) Salesperson shall have the option to purchase a portion of any Deal which he brings to the attention of the Broker; except that this option shall not apply to any building purchased by Broker or Principals of Broker which is or is intended to be wholly or partially occupied by Broker. The proportion of the Deal which the Salesperson shall have the option to purchase shall be a fraction, the numerator of which shall be one, and the denominator of which shall be the number of Principals of Broker electing to purchase a portion of the Deal, plus one. Salesperson must exercise such option within five days of being elected to purchase a portion of the Deal by agreeing, in writing, to purchase his proportionate share of the required deposit, if any. Salesperson acknowledges that as a condition to purchasing a portion of any Deal, he will be required to execute a Partnership Agreement

relating to that Deal satisfactory to the other participant(s) in that Deal, and to supply Broker with reasonable evidence of his ability to meet the financial obligations associated with investing in any Deal.

(c) Salesperson agrees to be responsible for his proportionate share of all expenses associated with any Deal in which he elects to participate regardless of whether the Deal is consummated.

(d) Except as provided in subparagraph (a) above, Salesperson shall not be entitled to receive any commission relating to the securing of tenant(s) or purchaser(s) for any properties in which Salesperson has an ownership interest.

10.  Loans to Salesperson

Broker will loan Salesperson a weekly sum (sometimes called "Draw") which may be increased if the parties hereto so agree, or decreased, in the sole discretion and judgement of Broker. Salesperson shall initially receive a weekly draw against commissions of $ 725.00 , subject to the provisions of this paragraph 10. All of Salesperson's commissions, whether earned or deferred, shall be security for all such loans; provided that commissions shall not be the only source from which such loans shall be repaid and Broker shall be entitled to pursue any and all other remedies against Salesperson. If, at any time during Salesperson's employment there shall be an unpaid loan balance, then (a) such loan balance shall automatically accrue interest at the Agreement Rate, and (b) Salesperson agrees, to repay such loans together with interest thereon to Broker within one (1) year

of demand in four (4) equal installments of principal, payable
every three (3) months, and shall pay interest on the unpaid
balance from the date of demand until the loans have been paid
(payable with each installment of principal) at the "Agreement
Rate" (as herein defined), which Agreement Rate shall be adjusted
monthly on the first day of each calendar month. In order to
secure the repayment of loans to be made in the future, Broker
shall have the right to retain a portion of Salesperson's earned
commissions, in addition to that portion of earned commissions
which is offset against existing loans, in an amount to be
determined by Broker in its sole judgement, provided that such
undistributed earnings so retained shall not exceed an amount equal
to fifty (50%) percent of Salesperson's annual anticipated draw.
The aggregate amount of Salesperson's outstanding loans with
accrued interest thereon, if any, shall be immediately due in full
upon Salesperson's termination.

11. Records; Salesperson's Statements

Broker shall maintain an account for Salesperson which shall
include all of Salesperson's commissions, both earned and deferred
("credits"), all loans made to Salesperson and all other proper
deductions, expenses, costs, etc., which shall be a charge against
such commissions in accordance with Paragraph 10 hereof ("debits").
Broker shall provide Salesperson with statements showing all
commissions earned and deferred, all loans made to Salesperson and
all deductions, expenses, costs, etc., charged against earned
commissions for each quarterly period on a calendar year basis.

11

Broker shall not be required to provide such quarterly statements until thirty (30) days after Salesperson has filed all required records for such quarter, including all commission cards.

12. Salesperson's Expenses

Salesperson shall be responsible for all of his own expenses of doing business and shall not be reimbursed by Broker for automobile, parking, travel, entertainment, licenses and/or dues or any other expenses of any kind or nature. Salesperson will pay all applicable professional license fees and dues promptly when due.

13. Disputes

If any dispute should arise between Salesperson and Broker, Salesperson and any other salesman of Broker, or Salesperson and any third party, relating to:

(a) the right of Salesperson to commission;

(b) the obtaining of an Exclusive Agency, Buyer or Tenant, Management Contract, Appraisal Contract or Condemnation Representation; and/or

(c) any other claim or grievance in connection with Salesperson's engagement and/or this Agreement, the parties agree that Broker shall be the sole judge for the purpose of resolving any such dispute, notwithstanding that Broker may be a party thereto. Salesperson agrees that the decision of Broker with respect thereto shall be final and binding upon Salesperson.

14.  Termination and Post Termination Commissions

(a)  Either party hereto may terminate this Agreement, without
cause, upon giving the other party two (2) weeks' prior written
notice of such party's intention to do so.

(b-1)  Except as provided in subparagraph (d) below, upon
termination of this Agreement, Broker shall pay to Salesperson,
within ten (10) days after such termination, any commission earned
in accordance with the terms of this Agreement during the prior
calendar quarter, after deducting therefrom any debit balance of
Salesperson's account.  If Broker shall fail to pay such amounts
within ten (10) days after written notice from Salesperson by
certified mail, return receipt requested, thereafter the principal
amount due shall accrue interest at Agreement Rate defined in
Paragraph 17(c)(ii).

Subject to Paragraph b-2 below, the only lease commissions
that Salesperson shall be entitled to after the termination of this
Agreement shall be (a) seventy-five (75%) percent of the usual
commissions with respect to the balance of the original lease term
of leases first entered into during the term of its employment and
(b) seventy-five (75%) percent of usual commissions on renewals by
option contained in an original lease first made during the term of
Salesperson's employment, as and when such commissions are
received.  With respect to lease "payout commissions" not
contingent on Lessee's continued tenancy, payment of rent or lack
of default, payout commissions received by Broker during the twelve
(12) month period  subsequent to Salesperson's termination shall

13

not be subject to the reduction to seventy-five (75%) percent of the usual commission, but shall be seventy-five (75%) percent thereafter. Salesperson shall not be entitled to any commissions on the balance of the term of any lease or renewal after termination of Salesperson's employment, except as provided in this subparagraph.

The only sale commission that Salesperson shall be entitled to after termination of this Agreement shall be (a) seventy-five (75%) percent of the usual commission with respect to an executed agreement of sale having any unsatisfied contingency, condition, litigation or threat of litigation in connection therewith at the time of Salesperson's termination, or (b) an option to purchase not contained in a lease which is subsequently exercised and closes. With respect to an agreement of sale executed prior to Salesperson's termination having no contingencies or litigation or threat thereof, Salesperson shall be entitled to 100% of the usual commissions. The twenty-five (25%) percent reduction shall compensate Broker for possible servicing costs. The right to such commissions shall terminate upon the termination of any such lease for any reason whatsoever.

(b-2) In no event shall any leasing commissions be due or payable to Salesperson with respect to the portion of any lease term occurring after five (5) years after the date of Salesperson's termination.

(c) Upon termination of this Agreement, Salesperson shall return to Broker all materials, files and records relating to

14

Salesperson's duties hereunder and any and all equipment of Broker, including, but not limited to, listing books and keys and all copies or duplicates of same. Salesperson shall, after termination of this Agreement, cooperate with Broker, upon request in connection with, and provide Broker with information concerning, any transactions or other matters involving Broker about which Salesperson has knowledge including, without limitation, by providing testimony in any litigation or claim involving Broker.

(d) If Salesperson shall violate any of the terms and conditions of this Agreement, including, without limitation, Paragraphs 2(c), 2(d) and 15 hereof, Broker, in addition to all other remedies in equity or law, shall be entitled to all costs of suit and reasonable attorney's fees and shall have the right to retain any and all commissions which would have been payable to Salesperson in accordance with the terms of this Agreement, including deferred and earned but undistributed commissions and commissions which would have become payable pursuant to the terms of this Agreement following the termination of Salesperson's employment hereunder; such violation by Salesperson shall constitute a waiver of all of his rights to such commissions. If Broker shall violate any of the terms and conditions of this Agreement, in addition to all other remedies in equity or law, Salesperson shall be entitled to all costs of suit and reasonable attorney's fees.

15. Restrictive Covenants

(a) During the course of his engagement hereunder, Salesperson

shall not, without the express written approval of Broker, engage in or participate in any real estate business, transaction or dealing other than for the account of an on behalf of Broker or, own, lease, buy or sell any real estate whatsoever except that which shall be used by Salesperson and his family as a primary or secondary dwelling and shall not accept from any person or entity other than Broker fees, commissions or gifts arising out of or in connection with any real estate business, transaction or dealing.

(b) Salesperson has or will be given access to certain proprietary, private and confidential information of Broker. Salesperson shall not at any time (except during the course of and within the scope of his engagement by Broker) communicate, disclose or divulge to any person, firm or corporation or use for his own benefit or for the benefit for any person, firm or corporation, any proprietary, private or confidential information which Salesperson may heretofore have received or hereafter receives concerning Broker or with respect to the conduct and details of the business conducted by Broker including, but not limited to, information relating to lease expirations for tenants and prospective tenants and landlords and prospective landlords, lists of customers and of prospective customers, mailing lists of customers and prospective customers, current tenant lists, information relating to rent-rolls and lease terms, information relating to arrangements with salesmen of Broker and to the terms and conditions of management contracts of Broker and to arrangements for compensation and present and future plans, business methods, forms, statistics, credit

16

information sources of financing or any other confidential information, no matter from whom or in what manner he may have acquired such information.

(c) During the course of his engagement hereunder, and for a period of two (2) years thereafter, Salesperson shall not, directly or indirectly, whether as an employee, principal, partner, agent, stockholder, independent contractor, consultant of otherwise:

(i)     Solicit either directly or indirectly any Clients, as defined in Paragraph 18(c)(iii), prospective Clients of Broker including, but not limited to, Clients introduced to Broker by, or solicited by Salesperson during the term of this Agreement, with respect to the sale, leasing or management of real estate or businesses located within the counties of Philadelphia, Bucks, Montgomery, Chester, Delaware, Berks, Lancaster, Lehigh, Luzerne and Northampton in the Commonwealth of Pennsylvania, the counties of Camden, Burlington, Salem, Gloucester, Atlantic, Cumberland, Mercer and Ocean in the State of New Jersey, and the county of New Castle in the State of Delaware, or with respect to real estate or businesses located outside of such counties which are owned by Clients of Broker which Clients maintain a place of business in any such counties.

(ii)    Seek to influence, or influence, any other salesman or employee of Broker to terminate his relationship with Broker.

(d)    Salesperson acknowledges that irreparable injury will result to Broker's business if Salesperson breaches any of the

17

covenants contained in this, Paragraph 15, and that Broker's remedies at law will be inadequate; therefore, Broker shall be entitled, in addition to any other remedies or damages available, to specific performance or injunctive relief to restrain violation thereof by Salesperson.

(e)  If Broker shall find it necessary to resort to the Courts for enforcement of any of the restrictive covenants contained in this, Paragraph 15, the term of such restrictive covenant shall be extended by a period of time equal to the period of time during which Salesperson was in violation of such restrictive covenant.

(f)  Salesperson agrees that if any or any portion of the foregoing covenants, or the application thereof, is construed to be invalid or unenforceable, the remainder of such covenant or covenants of the application thereof shall not be affected and the remaining covenant or covenants will then be given full force and effect without regard to the invalid or unenforceable portions.  If any covenant is held to be unenforceable because of the area covered, the duration thereof, of the scope thereof, Salesperson agrees that the Court making such determination shall have the power to reduce the area and/or duration and/or scope thereof and the covenant shall then be enforceable in its reduced form

16.  Indemnification

Each party ("Actor") hereby indemnifies the other party ("Other") and holds the Other harmless from and against any and all costs, expenses, losses, claims, demands, damages or liabilities to

which the Other, the principals of Other, or their heirs, executors, administrators, successors and assigns of them or any of them may become subject insofar as any such costs, expenses, losses, claims, demands, damages or liabilities arise out of, are based upon or are related to any wrongful or grossly negligent act of Actor or any breach by Actor of the terms and conditions of this Agreement (including the restrictive covenant contained herein), and will reimburse the Other, its principals, or the heirs, executors, administrators, successors and assigns of them or any of them for any costs or expenses (including reasonable attorney's fees) reasonably incurred by them or any of them in connection with investigating or defending any such losses, claims, damages, liabilities or actions. Broker shall be entitled to set off any sums which become owing to it by virtue of this indemnity against commissions owing to Salesperson.

17. <u>Broker's License</u>

Broker agrees to maintain and all licenses required of it by the applicable governmental authorities in the states in which it elects to do business.

18. <u>Miscellaneous</u>

(a) This Agreement sets forth the entire agreement between the parties and it shall not be modified except by a writing signed by both parties hereto. Any failure or failures by Broker to enforce against Salesperson any of the terms, covenants and conditions of this Agreement shall be neither a waiver of its

right to do so in the future nor a modification or cancellation of any such terms, covenants and conditions.

(b)   In any successful action by Broker against Salesperson to enforce this Agreement, Broker shall be entitled to recover from Salesperson Broker's reasonable legal expenses.

(c)   All notices or other communications hereunder shall be deemed to have been duly given if delivered by hand to the party to be notified or mailed to such party, certified or registered mail, return receipt requested, with postage prepaid, addressed to such party at the address of such party set forth below:

<div style="padding-left: 2em;">

Broker:       Lanard & Axilbund, Inc.
              399 Market Street
              Philadelphia, PA  19106

Salesperson:  Jason M. Wolf
</div>

(d)   As used in this Agreement and the Schedule(s) hereto:

(i)   a "principal" of Broker means any person, firm or entity owning stock in Broker or having substantially the same rights as a stockholder; and

(ii)   the term "Agreement Rate" means a rate of interest (not to exceed the maximum legal rate allowed) which equals the greater of (i) the commercial lending rate of interest fixed and announced from time to time by CoreStates Bank, N.A., Philadelphia, Pennsylvania and designated as its Prime Rate, or (ii) the "applicable Federal rate" as defined in Section 7872 of the Internal Revenue Code of 1954, as amended, generally referred

to as the "Federally imputed interest rate".

(iii)    a "Client" shall mean any entity that engaged Broker to perform any service, or paid Broker a commission or fee within five years of Salesperson's termination.  Additionally, a Client is an entity that has leased as lessor or lessee or sold/purchased properties in a transaction in which Broker was a broker, within five years of termination of Salesperson's contract.

Client shall include any entity that is, at Salesperson's termination, working with Broker or who has worked with or been actively solicited by Broker within the three (3) year period prior to termination of Salesperson's contract in an effort to (a) lease as lessor or lessee or purchase/sell property, or (b) obtain an Exclusive Agreement, or (c) solicit engagement by the entity for appraisal, assessment, reduction, condemnation representation or other real estate services.

As to municipal, state and federal agencies, a Client shall be limited to only divisions, departments or agencies thereof with whom Broker has dealt with in the above described manner.

As to developers, a Client shall include those developers Broker has represented to a meaningful extent in the last five (5) years prior to Salesperson's termination.

(e)    This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the day and year first above written, and intend to be legally bound hereby.

LANARD & AXILBUND, INC.

By: _____

By: _____

By: _____
JASON M. WOLF

## SCHEDULE A

### COMMISSION SCHEDULE*

The percentages set forth in this Schedule are percentages of the commissions or fees earned and received by Broker; (after deduction of all costs and expenses) with respect to a particular transaction.

I. Sale Of Property Or Business Or Leasing Of A Property Not Owned In Whole Or In Part By Any Of The Principals Of Broker Where Broker Is Paid Its Commission In Full By The Owner At The Time The Lease Agreement Is Fully Executed.

   A. If Broker has an Exclusive Agency which was obtained through the sole efforts of Salesperson and the sale or leasing takes place while said Agency is in full force and effect,

      1. Salesperson shall receive 50% if either Salesperson or if a principal of Broker shall obtain the Buyer or Lessee; or

      2. Salesperson shall receive 25% if another salesman or an employee of Broker shall obtain the Buyer or Lessee;

      3. Salesperson shall receive 50% of Broker's net commission if a cooperating Broker shall obtain the Buyer or Lessee.

   B. If Broker has an Exclusive Agency which was obtained through the sole efforts of a salesman but the property or business of the Agency is not within the jurisdiction of the Marketing Division of the salesman who obtained the Agency, and the sale or leasing takes place while said Agency is in full force and effect,

      1. Salesperson shall receive 10% if Salesperson obtained the Exclusive Agency and another salesman or employee of Broker obtained the Buyer or Lessee, or 25% if Principal of Broker obtained the Buyer or Lessee and another salesman of Broker was assisting Broker in marketing the property or business; or

*Attached hereto for reference is a Working Schedule of Commissions (Schedule "C") summarizing Schedule "A". In case of conflict Schedule "A" shall govern.

2. Salesperson shall receive either 40% if Salesperson shall obtain the Buyer or Lessee and was assisting Broker or Broker was marketing the property or business, or 30% if Salesperson shall obtain the Buyer or Lessee and another salesman of Broker was assisting Broker in marketing the property or business; or

3. Salesperson shall receive 10% if Salesperson is appointed by Broker to assist Broker in marketing the property or business and either another salesman or an employee of Broker obtains the Buyer or Lessee, or 25% if Principal of Broker obtains the Buyer or Lessee, or 20% if a Cooperating Broker shall obtain the Buyer or Lessee.

C. If Broker has an Exclusive Agency which was obtained through the sole efforts of another salesman of any employee of Broker, Salesperson shall receive 25% if Salesperson shall obtain the Buyer or Lessee.

D. If Broker has an Exclusive Agency which was obtained through the efforts of a principal of Broker.

1. Salesperson shall receive either 50%, if Salesperson shall obtain the Buyer or Lessee and was assisting Broker in marketing (or Broker was marketing) the property or business, or 35% if Salesperson shall obtain the Buyer or Lessee and another salesman of Broker was assisting Broker in marketing the property or business; or

2. Salesperson shall receive 15% if Salesperson is appointed by Broker to assist Broker in marketing the property or business and either another salesman or any employee of Broker shall obtain the Buyer or Lessee, or 50% if a Cooperating Broker shall obtain the Buyer or Lessee. Should principal of Broker obtain the Buyer or Lessee, the marketing salesman shall receive 25%.

E. If Broker does not have an Exclusive Agency, Salesperson shall receive 50% in the event Salesperson shall obtain the Buyer or Lessee.

II. Leasing Of A Property Not Owned In Whole Or In Part By Any Of The Principals Of Broker, Where Broker Shall Be Collecting The Rental From The Tenant Or Is Paid A Commission Periodically By The Owner Of The Property:

A. If Broker has an Exclusive Agency on a property which was obtained through the sole efforts of Salesperson and a Lease Agreement is made while said Agency is in full force and effect,

1. Salesperson shall receive 50% in the event Salesperson or a cooperating broker shall obtain the Tenant or if a principal of Broker shall obtain the Tenant.

2. Salesperson shall receive 25% if another salesman or an employee of Broker shall obtain the Tenant.

B. If Broker has an Exclusive Agency which was obtained through the sole efforts of a salesman but the property is not within the jurisdiction of the Division of the salesman who obtained the Agency, and a Lease Agreement is made while said Agency is in full force and effect,

1. Salesperson shall receive 10% if Salesperson obtained the Exclusive Agency and another salesman or employee of Broker obtained the Tenant, or 25% if Principal of Broker obtained the Tenant, or 20% IF A Cooperating Broker shall obtain the Tenant; or

2. Salesperson shall receive either 40% if Salesperson shall obtain the Tenant and was assisting Broker or Broker was marketing the property, or 30% if Salesperson shall obtain the Tenant and another salesman of Broker was assisting Broker in marketing the property; or

3. Salesperson shall receive 10% if Salesperson is appointed by Broker to assist Broker in marketing the property and either another salesman or an employee of Broker obtains the Tenant, or 25% if Principal of Broker obtains the Tenant, or 20% if a Cooperating Broker shall obtain the Tenant.

C. If Broker has an Exclusive Agency which was obtained through the sole efforts of another salesman or an employee of Broker, Salesperson shall receive 25% if Salesperson shall obtain the Tenant.

D. If Employer has an Exclusive Agency which was obtained through the efforts of a principal of Broker.

1. Salesperson shall receive either 50% if Salesperson shall obtain the Tenant and was assisting Broker in marketing (or Broker was marketing) the property, or 35% if Salesperson shall obtain the Tenant and another salesman of Broker was assisting Broker in marketing the property; or

2. Salesperson shall receive 15% if Salesperson is appointed by Broker to assist Broker in marketing the property and either another salesman or an employee of Broker shall obtain the Tenant, or 50% if a Cooperating Broker shall obtain the Tenant. Should principal of Broker obtain the Tenant the marketing salesman shall receive 25%

E. If Broker does not have an Exclusive Agency, Salesperson shall receive 50% if Salesperson shall obtain the Tenant.

F. On leases executed after October 9, 1978, if a Tenant shall purchase the premises leased by such Tenant either during the original term of the lease of during a renewal period, and if Broker receives a commission with respect to such purchase, the Salesperson who obtained the Tenant (provided that such Salesperson is engaged by Broker at the time of the purchase) shall receive a sale commission in accordance with the sale commission schedule in effect at the time that the original lease was executed.

III. If Salesperson obtains a Buyer or Tenant for a property owned in whole or in part by any Principal of Broker, Salesperson shall receive the commission to which he would have been entitled if Broker had obtained an Exclusive Agency for sale or lease for a property owned by a third party.

IV. If Salesperson shall, through his sole efforts, obtain for Broker a contract to make an appraisal for an Owner, act as a consultant to an Owner of Tenant to represent an Owner or Tenant in connection with a condemnation or assessment reduction, to serve as an arbitrator, or to give expert testimony for an Owner or Tenant, Salesperson shall receive 15%.

V. In the event Salesperson (hereinafter referred to as "Data Package Salesperson") secures information on a multi-tenant investment property (hereinafter referred to as "MTI Property") such information to include a physical description, lease digest, income and expense data - and reasonable verification of the aforementioned information, and shall assemble such information and prepare and provide a pro-forma income and expense statement and obtain a letter from the Ownership agreeing to pay commission, the said Salesperson shall be paid a commission of 25% of the commission received by Employer in the event the property is sold. In addition, the Salesperson who is the selling Salesperson shall receive 25% of the commission received by Employer. However, if an agent is appointed with respect to the sale of the MTI Property, be it Employer or another Broker, then the Data Package Salesperson shall not be entitled to the commission.

4

herein provided in this Section V and shall only receive such compensation as he is otherwise entitled to receive under Section I through IV of this Schedule "A".

## LANARD & AXILBUND, INC. INSURANCE POLICIES

Professional Liability - The Salesperson is covered under Broker's policy as long as they are acting on behalf of Broker. "Moonlighting" activities are not covered. If Salesperson is negligent or acts willfully he will be responsible for the policy deductible.

Workman's Compensation - The Salesperson is not covered under Broker's policy. It is recommended that salesperson secure its own policy.

Employee Automobile Non-Ownership Liability - Broker is covered for automobile liability claims arising out of Salesperson's use of their automobiles while acting on behalf of Broker. However, the Salesperson would not be covered. They must be covered under their own automobile policy.

Comprehensive General Liability - Broker's policy covers Salesperson.

Employee Dishonesty Board - Broker's policy covers Salesperson.

Inspection of Policies - Salesperson may, from time to time, inspect the above-mentioned insurance policies of Broker at the offices of Broker upon prior written request.

*SCHEDULE C*

*WORKING*
*COMMISSION SCHEDULE*

I. Sale of Property/Payout on Lease/Sale of Business.

    A. Salesperson Obtains Exclusive Agency

        1. Salesperson or Principal of Broker sells      50%
        2. Other salesman of employee of Broker sells    25%
        3. Cooperating Broker sells      50%

    B. Non-Jurisdiction

        1. Salesperson Obtains Agency Only And,

            (a) Another salesman or employee of Broker sells   10%
            (b) Principal of Broker sells    25%
            (c) Cooperating Broker sells    20%

        2. Salesperson handles and sells    40%
        3. Salesperson sells ONLY    30%
        4. Salesperson handles and,

            (a) Another salesman or employee of Broker sells   10%
            (b) Principal of Broker sells    25%
            (c) Cooperating Broker sells    20%

    C. Salesperson sell Another Salesperson's Agency    25%

    D. Office Agency/Any Principal of Broker Owns all or part

        1. Salesperson handles and sells    50%
        2. Salesperson sells    35%
        3. Salesperson handles/another salesman or employee
           of Broker sells    15%
        4. Salesperson handles/Cooperating Broker sells    50%
        5. Salesperson handles/Principal sells    25%

    E. Sale of Non-Agency    50%

    F. Appraisals, Condemnation, Assessment Reduction,
       Arbitrator, Expert Testimony    15%

    G. Salesperson provides data package on multi-tenant
       investment property

        1. Data Package Salesperson    25%
        2. Selling Salesperson, if any    25%

II. Lease of Property

    A. Salesperson Obtains Exclusive Agency

| | |
|---|---|
| 1. Salesperson or Principal of Broker leases | 50% |
| 2. Other Salesperson or Employee of Broker leases | 25% |
| 3. Cooperating Broker leases | 50% |

    B. Non-Jurisdiction

        1. Salesperson Obtains Agency Only And

| | |
|---|---|
| (a) Another salesman or employee of Broker leases | 10% |
| (b) Principal of Broker leases | 25% |
| (c) Cooperating Broker leases | 20% |

| | |
|---|---|
| 2. Salesperson handles and leases | 40% |
| 3. Salesperson leases ONLY | 30% |
| 4. Salesperson handles and | |

| | |
|---|---|
| (a) Another salesman or employee of Broker leases | 10% |
| (b) Principal of Broker leases | 25% |
| (c) Cooperating Broker leases | 20% |

    C. Salesperson Leases Another Salesperson's Agency     25%

    D. Office Agency/Any Principal of Broker Owns all or part

| | |
|---|---|
| 1. Salesperson handles and leases | 50% |
| 2. Salesperson leases | 35% |
| 3. Salesperson handles/another salesman or employee of Broker leases | 15% |
| 4. Salesperson handles/Cooperating Broker leases | 50% |
| 5. Salesperson handles/Principal leases | 25% |

    E. Lease of Non-Agency     50%

\22249

2